DARBY *v.* FREEMAN.

1. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW.
   Chancery cases are considered *de novo* by Supreme Court.

2. TAXATION—TAX SALE—SCAVENGER SALE—RIGHT TO MEET HIGH BID.
   Assignee of right remaining in estate of former owner to bid at scavenger sale, which assignee was also the grantee of one of several parties to whom the property had been devised, not having had any interest in any part of a parcel of property at the time of 1938 tax sale under which the State acquired absolute title to the property because of failure of redemption from tax sale, was not entitled to meet all or any part of the bid made at the scavenger sale in March, 1941, by the then owners of a part thereof, as under the statutes then in force such right to match the bid was confined to owners at time of tax sale and was not transferable (Act No. 155, § 7, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939).

3. SAME—FEE TITLE OF STATE.
   When the State becomes the owner of title to land in fee because the former owners failed to pay taxes assessed, a new chain of title is started.

4. SAME—SCAVENGER SALE—MATCHING HIGH BID—AMENDATORY ACT.
   Act amending State land office board act so as to extend right to match high bid at scavenger sale from only owners at time of tax sale to include assignees or grantees of owners at time title vested in State would not be applicable to property sold to purchaser who became entitled to deed prior to effective date of amendatory act (Act No. 155, §§ 5a, 7, Pub. Acts 1937, as added and amended by Act No. 363, Pub. Acts 1941).

5. SAME—SCAVENGER SALE—OFFERING OF PROPERTY AS SINGLE PARCEL.

State land office board was justified in offering at scavenger sale a parcel of land in its entirety where it had been assessed, taxed and sold to the State as a unit, notwithstanding that after the tax sale the property was divided between defendants who purchased entire parcel at scavenger sale and plaintiffs' predecessors in title (Act No. 155, § 7, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939).

6. VENDOR AND PURCHASER—SCAVENGER SALE—PURCHASE BY DEFAULTING VENDEE AFTER TERMINATION OF LAND CONTRACT.

Purchase of entire parcel at scavenger sale by former vendees under land contract who had assumed payment of taxes thereon, defaulted, divided the land with the vendor after tax sale and terminated the land contract under circumstances permitting vendor and vendees to redeem their respective portions of the parcel did not constitute a redemption of the vendor's parcel for benefit of plaintiffs, assignees of vendor's right to redeem, in view of the termination of the contractual relationship.

7. APPEAL AND ERROR—REMAND—DETERMINATION OF DAMAGES.

Upon decree adverse to plaintiffs seeking to hold one-time land contract vendees of entire parcel of land as having redeemed a portion thereof for benefit of plaintiffs by buying entire parcel at scavenger sale, where plaintiffs had deposited bond to indemnify defendants for damages resulting from deprivation of possession of entire parcel, case is remanded for determination of damages (Act No. 155, Pub. Acts 1937, as last amended by Act No. 329, Pub. Acts 1939).

Appeal from Genesee; Elliott (Philip), J. Submitted January 6, 1943. (Docket No. 13, Calendar No. 42,120.) Decided February 23, 1943.

Bill by Claude O. Darby, his wife, and others against Frank Freeman, his wife, Vernon J. Brown, Auditor General, and the State Land Office Board for a declaration of rights regarding title to land and for injunctive relief. Bill dismissed as to defendants Auditor General and State Land Office Board. Decree for plaintiffs against other defendants. Defendants appeal. Reversed in part.

*Lewis Kearns,* for plaintiffs.

*Cameron & Cameron,* for defendants.

STARR, J.   Defendants Frank Freeman and Minnie Freeman, husband and wife, appeal from a decree determining that their purchase of certain land in the city of Flint from the State land office board at scavenger sale constituted a redemption of a part of such land for the benefit of plaintiffs Claude Darby and Bernadette Darby, husband and wife.

From the record and stipulation of facts it appears that one Eva K. Cogshall, now deceased, at some time not shown, prior to May 3, 1938, had sold the following described property to defendants Freeman on land contract:

"Lot 8, and the westerly 20 feet of lot 9, block C of Mrs. Lucy Stewart's addition to the city of Flint" (hereinafter referred to as the entire parcel).

In the land contract defendants Freeman agreed to pay the taxes on the entire parcel of land.   They failed to pay such taxes, and at the tax sale on May 3, 1938, the entire parcel was bid in by the State of Michigan for delinquent taxes for 1935 and prior years.

About October 14, 1938, Eva K. Cogshall and defendants Freeman agreed to terminate their above-mentioned land contract and to divide the land and tax assessments between them.   In pursuance of such agreement Eva K. Cogshall conveyed by quit-claim deed to defendants Freeman that part of the entire parcel described as follows:

"Lot 8 of block C, except the east 26 feet of the northerly 120 feet, also except the east 29 feet of the

southerly 45 feet, of Mrs. Lucy Stewart's addition to the city of Flint. The east four feet of the westerly 120 feet of the above-described property to be used in common with the west four feet of the northerly 120 feet of the property adjoining on the east as a joint driveway" (for sake of brevity hereinafter referred to as parcel A).

On the same date, October 14, 1938, defendants Freeman conveyed by quitclaim deed to Eva K. Cogshall that part of the entire parcel described as follows:

"The west 20 feet of lot 9, block C, also the east 26 feet of the northerly 120 feet of lot 8, block C, also the east 29 feet of the southerly 45 feet of lot 8, block C, all of Mrs. Lucy Stewart's addition to the city of Flint. The west four feet of the northerly 120 feet of the above described property to be used in common with the east four feet of the northerly 120 feet of property adjoining on the west as a joint driveway" (for sake of brevity hereinafter referred to as parcel B).

As to the above-mentioned quitclaim deeds the stipulation provides, in part:

"Both of said deeds were recorded. As a result of this agreement and the said conveyances, all contractual relations between said parties (Eva K. Cogshall and defendants Freeman) were terminated and each of said parties were in position to redeem their respective share if they so desired and were able."

Eva K. Cogshall died November 27, 1938, and by will devised the above-described parcel B to plaintiffs Kile, Knowles, Ellis, and Hillker. Neither Eva K. Cogshall, her heirs, legatees or administrator, nor defendants Freeman redeemed the en-

tire parcel or any part thereof from the 1938 tax sale, and the State's title thereto became absolute November 3, 1939 (1 Comp. Laws 1929, § 3467, as amended by Act No. 10, Pub. Acts 1932 [1st Ex. Sess.], and by Act No. 325, Pub. Acts 1937 [Stat. Ann. 1938 Cum. Supp. § 7.120]).

The only asset inventoried in the estate of Eva K. Cogshall, deceased, was her interest, if any, in parcel B. The petition filed in probate court in the Cogshall estate for license to sell its interest in parcel B set forth "that the only right remaining in said estate was the right to bid at scavenger sale." In pursuance of probate court order the interest of the Cogshall estate in such parcel was sold to plaintiffs Darby on May 6, 1941. Report of such sale was filed May 9, 1941, and order confirming sale entered May 19, 1941.

The stipulation of facts, which is quite incomplete, does not show what consideration plaintiffs Darby paid to the Cogshall estate for its interest, if any, in parcel B. However, in their answer defendants Freeman alleged that plaintiffs Darby paid the Cogshall estate $50 for "the right remaining in said estate to bid at scavenger sale." It appears that on February 7, 1941, the administrator of the Cogshall estate had executed a conveyance of the estate's interest in parcel B to plaintiffs Darby. It also appears that on February 21, 1941, plaintiff Margaret Kile had conveyed her interest in such land by quitclaim deed to plaintiffs Darby.

Supplementary stipulation of facts filed herein shows that the entire parcel was offered for sale as a unit and sold at the scavenger sale on March 20, 1941, by the State land office board to defendants Freeman, the highest bidders, for $3,500 (Act No. 155, Pub. Acts 1937, as amended by Acts Nos. 29,

244, and 329, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 3723–1 *et seq.,* Stat. Ann. 1940 Cum. Supp. § 7.951 *et seq.*]).

Plaintiffs Darby did not present a bid for the entire parcel at the scavenger sale but requested the board to divide the property and to offer parcel B separately. Such request was refused. Plaintiffs Darby did not offer to meet the highest bid for the entire parcel but, subsequent to the sale, demanded the right to meet the bid of defendants Freeman as to that part of the property described as parcel B. The board denied such demand. The stipulation of facts states further that "no taxes have been paid upon the property since May 3, 1938, and the taxes for the year 1938 were not paid, and there was no division of the assessment on the entire property prior to October 14, 1938."

On July 26, 1941, plaintiffs Darby filed bill of complaint alleging, in substance, that they had been deprived of their property by the action of the State land office board (1) in refusing to divide the entire property and offer parcel B for sale separately; (2) in denying them the right to present a separate bid for parcel B; and (3) in denying them the right to meet that part of the highest bid for the entire parcel that was applicable to parcel B. In their bill they ask that defendants be permanently restrained from occupying or taking possession of parcel B and from collecting the rents therefrom. In amendments to their bill plaintiffs alleged further that under the original land contract with Eva K. Cogshall (terminated October 14, 1938) defendants Freeman were obligated to pay the taxes on the entire parcel for 1935 and prior years; that because of their default in the payment of taxes their purchase of the entire property at the scavenger sale constituted a redemption of that part described as parcel B for the benefit of plaintiffs; and

that defendants Freeman held such parcel B as fiduciaries and trustees for the benefit of plaintiffs. Plaintiffs alleged further that they were "owner" of the land described as parcel B within the meaning of Act No. 155, § 5a, Pub. Acts 1937, as added by Act No. 363, Pub. Acts 1941 (Comp. Laws Supp. 1942, § 3723–5a, Stat. Ann. 1942 Cum. Supp. § 7.955 [1]), effective June 19, 1941, and that they, as such "owner," were deprived of their right to meet that part of the bid of defendants Freeman at the scavenger sale that was applicable to parcel B.

Defendants auditor general and State land office board and defendants Freeman filed separate motions to dismiss plaintiffs' bill of complaint. From the trial court's opinion it appears that by consent of all parties the suit was dismissed as to the auditor general and land office board.

Defendants Freeman filed answer, denying plaintiffs' right to the relief sought and alleging, in substance, that all contractual relations with Eva K. Cogshall were terminated by their mutual agreement and exchange of quitclaim deeds on October 14, 1938, and that they were thereby relieved of their obligation to pay the delinquent taxes on parcel B for 1935 and prior years. In their answer defendants Freeman also alleged that plaintiffs Darby had no interest in the land described as parcel B at the time of the tax sale on May 3, 1938, and that they acquired no interest until after the State's title became absolute November 3, 1939.

The record indicates that no testimony was taken and that the matter was heard by the trial court upon the pleadings, briefs, arguments of counsel, and stipulation of facts. The trial court entered decree May 28, 1942, providing, in part, as follows:

"That the defendants, Frank and Minnie Freeman, his wife, by virtue of their purchase at scaven-

ger sale of property described as: (parcel B)
* * * redeemed said property for the parties, and
their successors and assigns, from whom they were
purchasing said property as contract vendees on
April 1, 1935, and to whom they were bound, under
the terms of their contract, to pay the real property
tax upon said parcel for the year 1935. That inas-
much as said defendants (Freeman) were in posses-
sion at the time the 1935 tax was assessed and were
expressly obliged by contract to pay said tax, that
they cannot be allowed, in equity and good con-
science, to profit by their default in permitting said
tax to become delinquent and the property sold to
the State of Michigan. That because of the con-
tractual duties of the defendants there was a legal
duty to pay said taxes, and that the interest bought
at scavenger sale by defendants is therefore deemed
to be held in trust for their obligee, her successors
and assigns. * * *

"Defendants redeemed for the benefit of their
contract obligee (Eva K. Cogshall) their (her) suc-
cessors and assigns, to the extent of the interest of
such obligee or such successors and assigns and said
interest is hereby found to be fairly and equitably
evaluated at the sum of $1,437.75."

The decree further provided, in substance, that
upon their paying such sum of $1,437.75 to the clerk
of the court plaintiffs Darby would be subrogated
to the rights of defendants Freeman as to parcel B,
under their contract for purchase of the entire
parcel at the scavenger sale, and would be entitled
to assignment of all interest acquired by defendants
Freeman in that part of the entire property de-
scribed as parcel B.

This being a chancery case, we consider the same
de novo. At the time of the tax sale on May 3, 1938,
plaintiffs Darby had no interest in any part of the
entire parcel of land later purchased by defendants

Freeman at the scavenger sale and, therefore, were not entitled to meet all or any part of the bid at the scavenger sale (Act No. 155, § 7, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 3723–7, Stat. Ann. 1940 Cum. Supp. § 7.957]). *Piotrowski* v. *State Land Office Board,* 302 Mich. 179; *National Bank of Detroit* v. *State Land Office Board,* 300 Mich. 240; *Stickler* v. *State Land Office Board,* 297 Mich. 271; *Redford Union Schools, District No. 1,* v. *State Land Office Board,* 297 Mich. 535.

Furthermore, there having been no redemption from the tax sale on May 3, 1938, the State of Michigan on November 3, 1939, became the owner of the title to the entire parcel in fee, and a new chain of title was started. *Meltzer* v. *State Land Office Board,* 301 Mich. 541; *Rathbun* v. *State of Michigan,* 284 Mich. 521; *Krench* v. *State of Michigan,* 277 Mich. 168. By the conveyances from the Cogshall estate and legatee under the Cogshall will in 1941, plaintiffs Darby acquired no title to or interest in any part of the property, nor did they acquire the right to meet all or any part of the highest bid at the scavenger sale.

However, plaintiffs Darby contend that as "owner," under Act No. 155, § 5a, Pub. Acts 1937, as added by Act No. 363, Pub. Acts 1941, effective June 19, 1941, they were entitled to meet the highest bid at the scavenger sale. Section 5a as added by the 1941 act provides, in part:

"The term 'owner' as used in this act shall mean the owner of any estate or enforceable legal interest in the land at the time title thereto vested in the State, *or the assignee or grantee thereof* by conveyance, assignment or operation of law effective prior to the date of sale under section 6 or 7 hereof or

other prior disposition of such land by the board or department, as the case may be."

The scavenger sale was held March 20, 1941, which was more than 30 days prior to June 19, 1941, the effective date of the above act. As the highest bidders at the scavenger sale, defendants Freeman were entitled to a deed or contract of purchase at the expiration of 30 days after the sale, which would be prior to the effective date of the 1941 act. In *National Bank of Detroit* v. *State Land Office Board, supra,* we said, p. 249:

"It follows that Act No. 363, Pub. Acts 1941, has no application to property sold by the State land office board to which the purchaser became entitled to a deed prior to the effective date of the act."

See, also, *Meltzer* v. *State Land Office Board, supra.*

Therefore, we conclude that the 1941 act has no application to the sale of the land in question to defendants Freeman at the scavenger sale. Plaintiffs Darby were not entitled to meet the highest bid at the scavenger sale as to all or any part of the property sold. See *Bain* v. *State Land Office Board,* 303 Mich. 666; *Meltzer* v. *State Land Office Board, supra; Stickler* v. *State Land Office Board, supra; Redford Union Schools, District No. 1,* v. *State Land Office Board, supra; James A. Welch Co.* v. *State Land Office Board,* 295 Mich. 85.

Plaintiffs Darby contend further that the land office board should have divided the entire property into two parcels and offered that part described as parcel B separately. Such contention is based on the statement in the stipulation of facts that "on or about October 14, 1938, the said Eva K. Cogshall and defendants Freeman agreed that the tax assessments on the two parts of said property be divided,

and the contract terminated." However, the stipu-
lation of facts provides further that "as a result of
this agreement and the said conveyances, all con-
tractual relations between said parties were termi-
nated and each of said parties were in position to
redeem their respective share if they so desired and
were able." The board refused to divide the prop-
erty and offered the entire parcel for sale as a unit.

It appears that the entire parcel had been as-
sessed and taxed as a unit and at the tax sale on
May 3, 1938, was sold to the State as a single parcel
or unit. Act No. 155, § 7, Pub. Acts 1937, as
amended by Act No. 244, Pub. Acts 1939, directs
that the board "shall prepare lists of the descrip-
tions of said parcels of land in each county" and
that "the several parcels of land appearing upon
such lists shall be offered for (scavenger) sale sepa-
rately." The entire property in question was sold
to the State as one parcel, and the statute merely
directs that it be sold at scavenger sale separately
from other parcels. We conclude that the board
was justified in offering the entire parcel for sale
as a unit.

Plaintiffs Darby contend further that the pur-
chase by defendants Freeman of the entire parcel
of land at the scavenger sale constituted a redemp-
tion of that part described as parcel B for the plain-
tiffs' benefit. This contention is based upon the
theory that, having agreed in their land contract
with Eva K. Cogshall to pay the taxes on the land,
defendants Freeman, at the time of their purchase
at the scavenger sale, stood in a trust or contractual
relationship to the Cogshall estate, assignor to
plaintiffs Darby. Such contention is without merit,
as on October 14, 1938, Eva K. Cogshall and defend-
ants Freeman agreed to divide the land and termi-
nate their contractual relations. *Gardner* v. *Thomas*

*R. Sharp & Sons,* 279 Mich. 467; *Joseph* v. *Rottschafer,* 248 Mich. 606.

Plaintiffs Darby cite and rely upon the case of *Jacobsen* v. *Nieboer,* 299 Mich. 116, wherein we held that a mortgagor as purchaser of land at a scavenger sale could not take advantage of his default in a covenant to pay taxes and was held to have redeemed the land subject to the mortgage. The factual situation presented in the *Jacobsen Case* readily distinguishes it from the case at hand. Other contentions by plaintiffs do not require consideration.

We cannot agree with the trial court's determination that the purchase by defendants Freeman of the entire parcel of land at the scavenger sale constituted a redemption of parcel B for the benefit of plaintiffs Darby and that defendants held such parcel in trust for the Darbys as successors and assigns of the estate of Eva K. Cogshall.

The trial court's decree is vacated, except insofar as it provides (1) for the deposit of a bond by plaintiffs to indemnify defendants for damages resulting from deprivation of possession of the entire parcel of land in the event such decree is set aside, and (2) for the retention of jurisdiction by the trial court to determine such damages.

A decree may be entered in this court vacating and setting aside the decree of the trial court and dismissing plaintiffs' bill of complaint. Such decree shall also remand the case to the trial court for determination of defendants' damages under the bond of indemnity.

Defendants shall recover costs.

Boyles, C. J., and Chandler, North, Wiest, Butzel, Bushnell, and Sharpe, JJ., concurred.