DEAN v DEPARTMENT OF NATURAL RESOURCES

Docket No. 57219. Argued November 4, 1976 (Calendar No. 1).—
Decided December 27, 1976.

Penny Dean brought a complaint to set aside a deed acquired by
the state at a tax scavenger sale or for return of the proceeds of
the sale over the amount of delinquent taxes, interest, and
expenses, on a theory of unjust enrichment, against the Depart-
ment of Natural Resources, the Treasurer of Genesee County,
the Treasurer of the City of Flint, Dudley Adle, and Albert G.
Adams. Plaintiff's real estate was sold at a tax sale after the
Genesee Circuit Court entered a judgment that the amount of
1964 taxes was delinquent. During the redemption period plain-
tiff paid her delinquent city taxes at the city treasurer's office
and received a certificate stamped "redeemed from city". The
delinquent county taxes were never paid. Title vested in the
state in 1968; the property was later sold to Dudley Adle at
public auction, and he subsequently sold it to Albert G.
Adams. The Ingham Circuit Court, Jack W. Warren, J., granted acceler-
ated judgment for defendants. The Court of Appeals, Danhof,
P. J., and McGregor and D. F. Walsh, JJ., affirmed (Docket No.
19355). Plaintiff was granted leave to appeal as to the issue of
unjust enrichment only. *Held:*

The accelerated judgment on Count II, for unjust enrichment,
is reversed, and the case remanded for further proceedings. The
action for unjust enrichment is not a collateral attack on the
judgment leading to the tax sale to the state; it is founded on
events occurring after that sale, leading to sale by the state for
a profit of almost $10,000 after the plaintiff had made a good-
faith attempt to redeem the land and believed that she had
redeemed it. Therefore it is not barred by the six-month statute
of limitations on actions to set aside tax deeds to the state, nor
is it barred by the prior judgment of the Genesee Circuit Court.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 6] 72 Am Jur 2d, State and Local Taxation § 911.
[3] 72 Am Jur 2d, State and Local Taxation § 1004 *et seq.*
[4] 72 Am Jur 2d, State and Local Taxation §§ 988, 991.
[5] 72 Am Jur 2d, State and Local Taxation § 908.

Justice Coleman, joined by Justices Fitzgerald and Lindemer, dissented. She wrote that:

1. The deed to the state vested absolute title in it. The original title ends and a new chain of title begins.

2. A good-faith attempt to pay the taxes within the proper time and to the proper official, which fails through mistake or fault of the tax-collecting official, is the equivalent of payment when asserted in the proper manner. The plaintiff, however, does not claim that she was improperly notified of the proceedings. She had nearly 18 months in which to act before the state's title became absolute, did not pay any taxes for subsequent years, and paid rent to the state to live in her house for three years before filing her claim.

3. Equity should intervene whenever it is made to appear that one party, public or private, seeks unjustly to enrich himself at the expense of another on account of his own mistake and the other's want of immediate vigilance. Here there is no showing of actual or constructive fraud by the tax-collecting officials. The plaintiff waited to file her claim for over four years after acquiring actual knowledge, and relies upon an allegation of her own mistake in thinking that when she paid the city taxes she had also paid the county taxes, but it is clear that the plaintiff sat upon her rights, of which she was duly notified, until title passed to the state. There is nothing in the facts of this case to shock one's conscience, or upon which to render the statute inoperative and thereby to find unjust enrichment.

61 Mich App 669; 233 NW2d 135 (1975) reversed.

### Opinion of the Court

1. Taxation—Sale of Land—Unjust Enrichment.

An action against the state for the money received by the state on a resale of land it had acquired by tax deed in excess of the amount of taxes on a theory of unjust enrichment is not an action to set aside the tax deed nor a collateral attack on the judgment leading to the tax deed, and accelerated judgment for the defendant on the grounds of prior judgment and that the statute of limitations had run on an action to set aside a tax deed was erroneous.

2. Taxation—Sale of Land—Unjust Enrichment.

A plaintiff whose land was taken by the state by tax deed after a good-faith, but unsuccessful, attempt by the plaintiff to redeem it from the tax sale, and later resold by the state for a profit, may be entitled in equity to recover the profit from the state on

a theory of unjust enrichment depending on the facts and circumstances developed at a trial on the merits of the complaint.

DISSENTING OPINION

COLEMAN, FITZGERALD, and LINDEMER, JJ.

3. TAXATION—TAX SALE—REAL PROPERTY—TITLE OF STATE.

*Failure of the owner of real property within the prescribed time limits to redeem land which is sold at a tax sale and bid in by the state results in vesting an absolute fee title in the state; the original title ends, and a new chain of title begins (MCL 211.321; MSA 7.661).*

4. TAXATION—REAL PROPERTY—PAYMENT—GOOD FAITH—REDEMPTION.

*A good-faith attempt to pay real property taxes, made within the proper time and to the proper official, which fails through mistake or fault of the tax-collecting official, is the equivalent of payment when asserted in the proper manner.*

5. EQUITY—UNJUST ENRICHMENT.

*Equity should intervene whenever it is made to appear that one party, public or private, seeks unjustly to enrich himself at the expense of another on account of his own mistake and the other's want of immediate vigilance.*

6. TAXATION—REAL ESTATE TAXES—TAX SALE—UNJUST ENRICHMENT.

*A plaintiff who owned real property while a tax delinquency accrued may not recover the difference, after a tax sale, between the tax delinquency and the total price paid at the tax sale on a theory of unjust enrichment where the plaintiff filed the action more than four years after title vested absolutely in the state, paid rent to the state on the real property for three years before bringing the action, did not pay the real property taxes for subsequent years, did not deny receipt of any statutory notice, and did not allege any irregularities in the action of the tax collection officials.*

*Sinas, Dramis, Brake, Turner, Boughton, McIntyre & Reisig, P. C.,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Jerome Maslowski* and *Russell E. Prins,* Assistants Attorney General, for defendant Department of Natural Resources.

WILLIAMS, J. *(to reverse)*. In the instant case, plaintiff has brought suit on two counts, alleging:

(1) that plaintiff's good-faith attempt to redeem her home during a one-year redemption period was in fact effective as a redemption, rendering the state's title void, and the state's conveyance of its title void; and

(2) that given the size of the delinquency, approximately $146.90, the good-faith effort of plaintiff to redeem her property, and the other facts .of this case, the receipt by the State of Michigan of $10,000 for the sale of what had been plaintiff's home constitutes, under equity, unjust enrichment.

The trial court has granted an accelerated judgment for defendant under GCR 1963, 116 on both counts. We granted leave limited to the issue raised in Count II of plaintiff's complaint.

It is important to recognize that this suit never went to trial on the merits. No factual record was developed. No testimony was taken. The trial court made no finding as to laches or constructive fraud, and we cannot resolve such questions given the present posture of this case.

We hold that the trial court erroneously granted accelerated judgment as to the count in plaintiff's complaint based on the allegation that given the specific facts of this case, the receipt by the state of almost $10,000 in profit on the sale of what had been plaintiff's home constituted unfair enrichment in equity. We therefore reverse the trial court on this issue and remand for proceedings not inconsistent with this opinion.

## I. PROCEEDINGS BELOW.

The events leading up to plaintiff's suit, as gleaned from plaintiff's complaint, defendant's an-

swer, and the transcript of the proceedings before the Circuit Court entitled "Motion for Accelerated Judgment" appear to be as follows.

In July, 1960, plaintiff purchased the home in question in Flint, Michigan with the proceeds from the life insurance policies of her recently deceased husband.

Due to alleged illness, plaintiff was unable to and did not pay the 1964 city and county property taxes of $230.68 and $146.90 respectively in timely fashion. As a result, the State Treasurer filed a petition in Genesee County Circuit Court to enforce the payment of these delinquent taxes pursuant to MCLA 211.61; MSA 7.105.

Apparently, under MCLA 211.66; MSA 7.111, the state published notice of a hearing on the petition in a newspaper once a week for three consecutive weeks prior to the hearing.

On April 4, 1967, absent plaintiff Penny Dean, the Genesee County Circuit Court issued a judgment pursuant to MCLA 211.67; MSA 7.112 that the amount of the taxes alleged to be delinquent in the State Treasurer's petition was valid, and that in default of payment, the property in question could be sold in a tax sale, and that if the property was bid in at such sale to the state, the state's title would become absolute at the end of the redemption period.

Sale of the property was held on the first Tuesday of May 1967 pursuant to MCLA 211.70; MSA 7.115. Apparently, for want of other bidders said premises were sold and bid unto the State of Michigan.

With the property sale held in May, 1967 began a one-year redemption period, after which the title of the state would become absolute.

During the one-year redemption period, plaintiff

attempted to redeem her property through the payment of her delinquent taxes. Precisely what happened when Penny Dean tried to redeem is unclear, given that we are dealing here with an accelerated judgment, which has thus far precluded development of the facts underlying this suit.

Plaintiff's complaint indicates that plaintiff thought that she had successfully redeemed her property.

The best picture of what happened, however, is provided in a discussion between the trial judge and plaintiff's attorney at the proceeding to resolve defendant's motion for accelerated judgment. It should be emphasized that plaintiff's attorney was himself uncertain of the facts, relying in part on what one of the defense attorneys had told him.

In any case, it appears that in Flint "a person goes in ordinarily and pays his city and county taxes at one and the same place in the city". Apparently, plaintiff "went to that same office [where both city and county taxes are ordinarily paid] and she said, in essence, how much money do you want", she paid that amount, and went away believing that she had redeemed her home.

It is not clear what, if anything, was told to plaintiff by the person accepting the delinquent city tax money. Plaintiff has as yet had no opportunity to testify as to this matter. She did receive a document stamped redeemed from the city.

Unfortunately for plaintiff, apparently when one attempts to redeem property in Genesee County, one does not go to one and the same office to pay off the city and the county as is the case in timely payment of taxes. One must go to a separate office to redeem the property in question from the county.

There is no indication of what notice, if any, of this variation in procedure was given plaintiff. Once again, there has been no opportunity to receive testimony on this question.

The defendant, Department of Natural Resources, alleges that on May 7, 1968, the redemption period expired and the title of the property in question vested absolutely in the State of Michigan, in spite of plaintiff's allegedly good-faith attempt to redeem.

We do not know whether plaintiff continued to believe her home had been redeemed during the balance of the redemption period.

In any case, on June 3, 1968, a deed was executed which pursuant to MCLA 211.67a; MSA 7.112(1) conveyed the property from the State Treasurer to the State of Michigan, and that deed was recorded on July 31, 1968.

From July, 1968 through September, 1971 plaintiff continued to live in what had been her home, paying rent in amounts ranging from $100 to $200.

On April 3, 1969 the property was conveyed to defendant Dudley Adle, a private investor, for the sum of $10,000. Sometime in 1971, Adle sold the property to Albert Adams, also a defendant here.

On October 4, 1972, plaintiff filed the instant suit in Ingham County Circuit Court charging 1) that the state's deed was ineffective because of an effective redemption by plaintiff in 1968 and 2) that the state had been unjustly enriched in the circumstances of this case in retaining the $10,000 received in the sale of the property.

On October 18, 1972, defendant Department of Natural Resources moved to dismiss plaintiff's complaint on the grounds of prior judgment and statute of limitations. On December 8, 1972, a

hearing was held on this motion. At that hearing, defendant's attorney made very clear the nature of his motion:

"Your Honor * * * I have filed a motion to dismiss, but actually it's in the nature of a motion for accelerated judgment. It's not denominated as such but, in essence, our motion really is that the plaintiffs are estopped to attempt to set aside the entire transactions involved here by reason of not having taken an appeal from the judgment that was entered in the Circuit Court for the County of Genesee relative to this property in the tax foreclosure proceedings relating to the delinquent county tax * * * .

"Additionally we claim that this matter is res judicata of the matters which were set forth in the complaint. * * * "

Clearly the thrust of defendant's motion for accelerated judgment under GCR 1963, 116 seems to be that plaintiff is precluded from bringing suit because of res judicata or collateral estoppel arising from the judgment in Genesee County Circuit Court, and because plaintiff did not try to annul the state's deed within the six-month period described below.

On October 3, 1973, the trial court issued an opinion granting an accelerated judgment to defendant.

The trial court supported its conclusion on two grounds.

First, the trial court cited MCLA 211.431; MSA 7.661 which provides in part as follows:

"*After the expiration of 6 months from* and after *the time when any deed made to the state under* the provisions of section 127 or *section 67a* of Act 206 of the Public Acts of 1893, being the general tax law, and acts amendatory thereto, *shall have been recorded in the*

*office of the register of deeds for the county* in which the land so deeded shall be situated, *the title of the state in and to the same shall be deemed to be absolute and complete, and no suit or proceeding shall thereafter be instituted by any person* claiming through the original or government title *to set aside, vacate or annul the said deed or the title derived thereunder* \* \* \* ." (Emphasis added.)

In the instant case, the deed conveying to the state was executed pursuant to § 67a in June, 1968, and recorded in July of that year, as noted above.

The trial court concluded that "while plaintiff claims unjust enrichment \* \* \* it is apparent that her suit in fact is one directed at vacating and annulling the deed and the title derived thereunder". Given this conclusion, and the fact that plaintiff's suit had been commenced after the six-month statutory period, the court felt that an accelerated judgment was in order due to the running of the statute of limitation.[1]

Second, the trial court concluded "that plaintiff's action is in fact nothing more than a collateral

---

[1] GCR 1963, 116.1 sets out the grounds for an accelerated judgment, and these grounds include bar due to a statute of limitations and due to prior judgment.

GCR 1963, 116.1 reads in its entirety as follows:

"Rule 116 Accelerated Judgment.

.1 Grounds. In a party's first responsive pleading, or by motion filed not later than his first responsive pleading, a party may demand that service of process be quashed or that judgment be entered dismissing 1 or more claims asserted against him upon any of the following grounds:

(1) the court lacks jurisdiction of the person or property,

(2) the court lacks jurisdiction of the subject matter,

(3) the party asserting the claim lacks legal capacity to sue,

(4) another action is pending between the same parties involving the same claim,

(5) the claim is barred because of release, payment, *prior judgment, statute of limitations,* statute of frauds, infancy, or other disability of the moving party, or assignment or other disposition of the claim before commencement of the action." (Emphasis added.)

attack on the judgment of the Genesee Circuit Court long since final". Thus, in the parlance of GCR 1963, 116.1(5), an accelerated judgment was in order due to a "prior judgment".[2]

Plaintiff appealed the accelerated judgment to the Court of Appeals, the Court of Appeals affirming.

We granted leave to appeal on November 25, 1975.

## II. DISCUSSION.

As shown above, plaintiff's complaint in this case is two-pronged. Count I alleges that plaintiff's efforts at redemption were effective and that therefore the state's title and the successors to its title are null and void. Count II alleges that in the facts of this case, the profit of some $9854 retained by the state in the sale of what had been plaintiff's home constituted unjust enrichment.

In concluding that plaintiff's suit, while claiming unjust enrichment, was in fact "directed at vacating and annulling the [state's] deed", the trial court merged the two counts into one, and in so doing was clearly in error. Unjust enrichment is an equitable action[3] which in this case is not directed toward annulling the state's deed, but rather toward the payment by the state of the difference between the amount of county tax still owed at the end of the redemption period and the amount of money received by the state in the conveyance of its *valid* deed to Mr. Dudley Adle.

We do not decide the validity of the trial court's

---

[2] *Id.*

[3] For a discussion of the concept of unjust enrichment, *see* Restatement Restitution, chapter 1. *See also Spoon-Shacket Co, Inc v Oakland County,* 356 Mich 151, 156; 97 NW2d 25 (1959).

accelerated judgment as to Count I of plaintiff's complaint, for we have not granted leave to appeal on this issue. However, the trial court's accelerated judgment as to Count II of plaintiff's complaint, unjust enrichment, was erroneous, for a suit on this theory was not barred by MCLA 211.431; MSA 7.661 or by the prior judgment in 1967 by the Genesee County Circuit Court.

The suit was not barred by the statute of limitations because, as shown above, an action for restitution on an unjust enrichment theory is not the action to void the state's deed referred to in the statute.

The suit is not barred by the prior judgment of the Genesee County Circuit Court because the subject matter of that judgment, *i.e.* the validity of the taxes of the state and the delinquency of plaintiff in the payment of those taxes, is completely independent of the subject matter of plaintiff's instant suit for restitution due to the unjust enrichment of the state.

The plaintiff does not here, nor, apparently has she at any time disputed that she was delinquent in the payment of her property taxes in 1964. She is not, contrary to the opinion of the trial court, collaterally attacking the judgment of the Genesee County Circuit Court that the computation of the taxes due was valid, that the plaintiff was delinquent in the payment of those taxes, and that the title of the state to the property in question would become absolute upon the expiration of the redemption period.

In fact, the events out of which plaintiff's claim of unjust enrichment arises occured subsequent to the default judgment entered by the Genesee County Circuit Court: the alleged good-faith attempt at redemption, the running of the redemp-

tion period after this attempt with plaintiff under the impression that she had in fact redeemed her home, the loss of her home, and the sale of the property by the state for a profit of close to $10,-000.

Clearly then, the trial court's accelerated judgment as to Count II of plaintiff's complaint was erroneous, and is hereby reversed.

We therefore reverse the trial court's accelerated judgment for defendant on Count II of plaintiff's complaint and remand for proceedings not inconsistent with this opinion.

Costs to plaintiff.

KAVANAGH, C. J., and LEVIN and RYAN, JJ., concurred with WILLIAMS, J.

COLEMAN, J. Leave to appeal was granted to consider this issue: When real property is sold at a scavenger sale, may the person who owned such property while the tax delinquency accrued recover the difference, after the scavenger sale, between the tax delinquency and the total price paid at the scavenger sale, on an unjust enrichment theory?

Plaintiff failed to pay the 1964 city and county taxes on her home in Flint. In 1967 the treasurer for the City of Flint sold plaintiff's premises for the amount of taxes due the city on the property. In January 1968, plaintiff paid the 1964 city taxes plus interest. She did not pay the county tax for that year (or any subsequent year). Both city and county taxes were payable to the city treasurer. A circuit court judgment dated April 4, 1967 ordered the parcel sold on May 2, 1967 for failure to pay county taxes and if the property was not redeemed within one year, the state was to receive absolute title.

On January 12, 1968, plaintiff paid the 1964 city taxes but not the county tax. This did not redeem the property. A deed conveying the property to the state was executed June 3 and recorded July 31, 1968. From July, 1968 through September, 1971, the state (and its grantee) collected money from plaintiff for rent of the property.

Our case began when plaintiff filed a complaint on October 4, 1972 alleging that she had redeemed the property in 1968 or that the "receipt of the $10,000 sale fee * * * by the state * * * constituted an unjust enrichment to said defendants at plaintiff's expense". The state moved to dismiss because the complaint "is a collateral attack upon the 1967 tax sale judgment * * * which * * * has long since become final" and because "plaintiff has no right, title or interest in or to the premises".

In an opinion dated October 3, 1973, the circuit court noted that plaintiff's action was filed "approximately five years and five months after the judgment was entered directing sale, and approximately four years and four months after the title vested absolutely in the state". The court concluded that "plaintiff's action is in fact nothing more than a collateral attack on the judgment of the Genesee Circuit Court long since final". It was also observed that "plaintiff does not, in fact, demonstrate or allege in the pleadings any real allegation of prejudicial irregularity".

The Court of Appeals affirmed on June 9, 1975 agreeing that "[p]laintiff cannot attack collaterally the first circuit court judgment". The Court noted MCLA 211.431; MSA 7.661 which reads in part:

"After the expiration of 6 months from and after the time when any deed made to the state under the provisions of section 127 or section 67a of Act 206 of the Public Acts of 1893, being the general tax law, and acts

amendatory thereto, shall have been recorded in the office of the register of deeds for the county in which the land so deeded shall be situated, the title of the state in and to the same shall be deemed to be absolute and complete, and *no suit or proceeding shall thereafter be instituted by any person claiming through the original or government title to set aside, vacate or annul the said deed or the title derived thereunder.*" (Emphasis added.)

The Court said "[p]laintiff's redemption efforts were not enough to make" this statute "inoperative".

Regarding plaintiff's unjust enrichment claim, the Court said "the failure of the owner to redeem within the prescribed time limits result[s] in vesting an absolute fee title in the state". The panel found that "[n]o matter how great the difference between the expenditure made by a tax sale purchaser and the actual value of the land, a court cannot help out the original owner".

The statute and relevant cases demonstrate that the deed to the state vested absolute title in it. See *Municipal Investors Association v Birmingham,* 298 Mich 314; 299 NW 90 (1941) and *Rathbun v State,* 284 Mich 521; 280 NW 35 (1938). The original title ends and a new chain of title begins. See *Krench v State,* 277 Mich 168; 269 NW 131 (1936), *Bain v State Land Office Board,* 303 Mich 666; 7 NW2d 101 (1942), and *Darby v Freeman,* 304 Mich 459; 8 NW2d 137 (1943).

Plaintiff does not claim that she was improperly notified of the proceedings. Compare *Dow v State,* 396 Mich 192; 240 NW2d 450 (1976). She had nearly 18 months in which to act before the state's title became absolute. For three years she paid a charge for living in her house and still did not bring an action until 1972.

In *James A Welch Co, Inc v State Land Office Board,* 295 Mich 85; 294 NW 377 (1940), plaintiff owned property in Flint which was sold for delinquent taxes and not redeemed. Under the statute, the city requested that the land be withheld from public sale. Claiming that "its right to become a purchaser of lands formerly owned by it * * * [was] a right superior to the right of the city * * * to withhold the lands from the sale" plaintiff petitioned for a writ of mandamus. The Court denied the petition. When the statutory redemption period elapsed, "plaintiff ceased to have any more interest in the title to the lands described in its petition than any stranger to that title".

In *Palmer v State Land Office Board,* 304 Mich 628; 8 NW2d 664 (1943), plaintiff's lands were sold to the state for delinquent taxes. After title became absolute, the property was deeded to the land office board and sold at public sale. A certificate of purchase was issued but the deed had not been executed.

Plaintiff claimed that "prior to the sale she had made good-faith attempts to pay the taxes * * * but that through the mistake, fraud, wrong or fault of the tax collecting officials, she had been led to believe that the taxes had been paid". She sought a hearing on her claim.

The Court's review of the statutes and cases produced a rule that "a good-faith attempt to pay taxes made within the proper time and to the proper official, which fails through mistake or fault of the tax-collecting official, is the equivalent of payment when asserted in the proper manner". The Court concluded that "it is mandatory upon the auditor general to hear and determine" plaintiff's claim.

There are significant differences between our

case and those supporting the *Palmer* rule. In *Hand v Auditor General,* 112 Mich 597; 71 NW 160 (1897), the taxpayer (according to *Palmer)* "having discovered the situation, tendered the tax to the auditor general, established the fact that he had made a reasonable effort to pay the tax in good faith, [and] was prevented by the mistake of the county treasurer". Our plaintiff waited over four years to file her claim despite having to pay for using her house. Also see *Hough v Auditor General,* 116 Mich 663; 74 NW 1045 (1898) ("Upon discovery of the facts, the taxpayer filed a petition * * * to set aside the tax sale").

This plaintiff's intent is not to preserve her interest in the property (she has moved to another state) but to assume the proceeds from the sale after she had become "a stranger to the title". Her delay in acting does not appear to be an assertion "in the proper manner" as required by *Palmer.* In *Odgers v Lentz,* 319 Mich 502, 506–507; 30 NW2d 43 (1947), the Court noted a statute provision (now MCLA 211.70; MSA 7.115) giving the owner a one year period in which to set aside the sale. This analysis was made:

"The Court held in *Hayward v O'Connor,* 145 Mich 52 [108 NW 366 (1906)], and in *Shaaf v O'Connor,* 146 Mich 504; 117 Am St Rep 652 [109 NW 1061 (1906)]:

" 'When the owner of land has notice—no matter how he obtains that notice—that his land has been sold for taxes, he must, if he desires to have the sale set aside by the circuit court, take proceedings within one year.'

"See, also, *Palmer v State Land Office Board,* 304 Mich 628. As stated in *Pratt v Corns,* 214 Mich 390, 395 [183 NW 71 (1921)]:

" 'One who has let his legal remedy be outlawed cannot obtain relief in equity. *Webster v Gray,* 37 Mich 37 [1877]. This doctrine has been frequently announced by this Court.' "

Also see *Farr v Nordman,* 346 Mich 266; 78 NW2d
186 (1956).

The plaintiff in *Rosin v State Land Office Board,*
314 Mich 482; 22 NW2d 833 (1946), had lost his
property for nonpayment of taxes. Before redeem-
ing it, he paid the state $6460 in rent. He sought
recovery of the money. The Court said "plaintiff as
former owner had no more interest in the title
than any stranger to the title". The plaintiff was
"not entitled to recover the rent which the state
required him to pay for the occupancy". The stat-
ute "does not indicate that the money is to be
returned to the former owner, in the event he
ultimately decides to redeem".

Much has been made of *Spoon-Shacket Co, Inc v
Oakland County,* 356 Mich 151; 97 NW2d 25
(1959). The plaintiff was over-assessed on its prop-
erty and paid too much in taxes. Within two
months after becoming actually aware of the as-
sessments, plaintiff sought restitution. The Court
said equity should intervene "whenever it is made
to appear that one party, public or private, seeks
unjustly to enrich himself at the expense of an-
other on account of his own mistake and the
other's want of immediate vigilance—litigatory or
otherwise". The Court further explained its hold-
ing:

"Sure, in the ordinary case of error of assessment of
property taxes, the remedy provided by hearing before
the board of review is final and exclusive. But where, as
rightfully found by the chancellor below, the 'mistake
(is) of such significance as to constitute * * * a con-
structive fraud,' equity's door in all learned courts is
firmly held open to the innocent, if careless, victim of
such fraud. (To repeat Cardozo above: 'Let the hardship
be strong enough and equity will find a way, though
many a formula of inaction may seem to bar the path.')
This does not mean that the purport hereof is one of

general grant, to early or late protestants of property tax assessments, of an additional or alternative remedy over and above the one afforded, by statute, before the board of review. It is to say only that the known remedy provided by equity, in favor of those actually or constructively defrauded, is available now as before in every case—involving taxation or otherwise—where the presented facts are sufficient to shock the conscience of the chancellor."

*Spoon-Shacket* does not resolve our case. We find no actual or constructive fraud. Plaintiff here waited for over four years after acquiring actual knowledge of the problem; the *Spoon-Shacket* plaintiff acted within two months.

Plaintiff does not deny receipt of any statutory notice, neither did she pay any taxes for subsequent years. Having lost title to the state, she paid rent. She had 18 months in which to redeem her property, but did not do so. It was over five years after the sale and over four years after title vested finally in the state—and later was sold to private parties—that plaintiff acted. No irregularities of state (or city) officials are alleged. Plaintiff, in the equity argument to render the statute inoperative relies upon an allegation of her own mistake in thinking that when she paid the city taxes, she had also paid the county taxes.

Accepting her allegation as true, we cannot accept the continued disregard of notices, and of redemption periods. Her payment of rent also militates against any argument that she still believed the property to be hers, although she paid no taxes for 1965, 1966, 1967 or until the end of the redemption period in 1968.[1]

---

[1] The deed to the state was dated June 3, 1968 and it was recorded on July 31, 1968. The property was sold by the state at public auction on April 23, 1969 and the proceeds divided according to statute on a pro rata basis among the proper county, city and school districts.

The fact is clear that plaintiff sat upon her rights, of which she was duly notified, until title passed to the state. There is nothing in the facts of this case to shock one's conscience. Title vested in the state in 1968. Plaintiff is a "stranger to the title". There are no facts available upon which to render the statute inoperative and thereby to find unjust enrichment. The statute was carefully followed and until it is amended or repealed[2] to provide otherwise, we are not at liberty to legislate a different distribution of proceeds from a valid tax sale.

The Court of Appeals is affirmed.

FITZGERALD and LINDEMER, JJ., concurred with COLEMAN, J.

---

[2] We are informed that an amendment to the statute is pending before the Legislature in which the amount received from a tax sale such as this would be distributed first to cover the arrearage on taxes plus interest, with the remainder to revert to the former owner.